# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **HAROLD ALLEN JONES** | * | **DOCKET NO. 07-1603** |
| **VERSUS** | * | **JUDGE WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Harold Jones[1] protectively filed his current application for Supplemental Security Income payments on January 17, 2006. (Tr. 48-51).[2] He alleged disability since May 14, 1993, due to diabetes, an auto accident, high blood pressure, and his heart. (Tr. 49, 60). The claim was denied at the initial stage of the administrative process. (Tr. 37-41). Thereafter, Jones requested

---

[1] Also known as Harold Jenkins. (Tr. 152).

[2] In a January 14, 1995, written decision, an Administrative Law Judge granted Jones' prior application for Supplemental Security Income payments. (Tr. 11). Jones drew disability benefits from May 1993 until February 2004. *Id.* At that point, the Commissioner terminated benefits following a report that Jones had been incarcerated since January 2003. *Id.* The instant application does not raise any reopening or cessation of benefits issues. *Id.*

and received a February 20, 2007, hearing before an Administrative Law Judge ("ALJ"). (Tr. 150-173). However, in a May 18, 2007, written decision, the ALJ determined that Jones was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 8-25). Jones appealed the adverse decision to the Appeals Council. Nonetheless, on August 3, 2007, the Appeals Council denied Jones' request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 3-5).

On September 24, 2007, Jones sought review before this court. He alleges that the Commissioner erred because plaintiff is not able to perform any type of work.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in

> [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

a) <u>Steps Two and Three</u>:

The ALJ determined at Step Two of the sequential evaluation process that Jones suffers severe impairments of "residuals of left hip and left leg injuries sustained in May 1993." (Tr. 13). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 14).

To establish that a claimant's injuries meet or medically equal a Listing, the claimant

must provide medical findings that support all of the criteria for a listed impairment (or most similarly listed impairment). *See, Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). An impairment that manifests only some of the requisite criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891 (1990). If the plaintiff fails to demonstrate the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 620.

In the case *sub judice*, plaintiff has not identified any listing that he purports to meet or equal, nor has he demonstrated that he meets or equals all of the criteria of any given listing. Accordingly, the court finds that the ALJ's Step Three determination is supported by substantial evidence. *See, Selders, supra*; *McCuller v. Barnhart*, 72 Fed. Appx. 155 (5th Cir. 2003).

b) Residual Functional Capacity and Beyond:

The ALJ next determined that Jones retained a residual functional capacity to perform light work, reduced by the inability to climb ladders/ropes/scaffolds, and to no more than occasionally climb ramps/stairs, balance, kneel, crouch, squat, crawl, or stoop. (Tr. 15).[3]

Plaintiff seems to contest the ALJ's decision to discount certain limitations recognized by

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

5

plaintiff's treating orthopedist, James Finley, M.D. In a June 7, 2006, letter, Dr. Finley wrote that plaintiff had a significantly degenerative left hip secondary to trauma. (Tr. 92). He opined that the condition prevented plaintiff from performing hard labor such as construction. *Id*. Finley believed that plaintiff could perform sedentary work once he completed his education. *Id*. In conclusion, he reiterated that plaintiff could not perform manual labor or heavy lifting due to his hip disease. *Id*.

To the extent that Finley's letter is incompatible with the exertional capacity for light work, the ALJ endeavored to discount the assessment. In this context, the Fifth Circuit has held that

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The instant ALJ discounted Dr. Finley's June 7, 2006, letter because it was largely dependent

6

upon plaintiff's subjective complaints of pain which were not otherwise sustained by the record. The ALJ emphasized that in July 1995, Dr. Finley released plaintiff to full activity, with the residual ability to perform light to medium work. (Tr. 122-123). At that time, Finley instructed Jones to return on an "as-needed" basis. *Id*. However, despite allegations of ongoing debilitating impairments, Jones did not see Dr. Finley for over ten years from 1996 until June 2006. (*See*, Tr. 18-19, 92-93).

The ALJ further noted that when plaintiff applied for benefits, he represented that he used a cane and brace/splint for ambulation, yet the consultative examiner remarked that Jones did not need an assistive device for ambulation. (Tr. 75, 87-91). The ALJ noticed that on his disability application, Jones stated that he did not perform household chores. (Tr. 71). However, Jones told the consultative examiner that he could sweep, mop, vacuum, and do the dishes. (Tr. 87-91). The ALJ further observed that even before his 1993 motor vehicle accident, plaintiff's work history was so sporadic that it raised credible doubts about plaintiff's motivation to work. (Tr. 19, 58).[4]

In lieu of Dr. Finley's June 2006 assessment, the ALJ exercised his well-reasoned discretion to credit the opinions of another treating physician, Dale Boersma, M.D., and a consultative physician, Bruce Torrance, M.D. In a March 13, 2006, letter to Disability Determination Services, Dr. Boersma wrote that he had seen Jones on three occasions since July 1, 2005. (Tr. 86). On January 16, 2006, Jones complained of sensation in left pectoral area. *Id*. Upon examination, Boersma could find nothing wrong. *Id*. Boersma stated that Jones never complained about his legs. *Id*. Moreover, although Jones' diabetes was uncontrolled, there was no evidence that he was disabled in any way. *Id*.

---

[4] Plaintiff had no reportable earnings from 1982 until 1990. *Id*.

On April 22, 2006, Dr. Torrance examined plaintiff at the request of Disability Determination Services. (Tr. 87-91). Jones reported that he experienced a constant 5/10 pain, which increased to 9/10 with movement and after standing for a long time. *Id*. Jones admitted that he had not seen a doctor for his leg pain in a long time. *Id*. Jones experienced chest pain about once or twice per month, but did not take medication for it. *Id*. He denied bilateral lower extremity edema. *Id*. Jones said that he could stand for no more than 15 minutes out of an eight hour day. *Id*. He said that he could sit for 30 to 40 minutes at a time, and lift 10 to 20 pounds. *Id*. Jones reported that although he could sweep, mop, vacuum, and do the dishes, he could not cook, shop, climb stairs, or mow the grass. *Id*.

Dr. Torrance observed that Jones demonstrated normal ambulation, and was able to dress and undress himself without difficulty. *Id*. There was no evidence of clubbing, cyanosis, or edema in any extremity. *Id*. Jones walked with a slight limp, but ambulated without difficulty. *Id*. He did not require an assistive device for ambulation. *Id*. Jones had the ability to perform fine and gross manipulative skills without difficulty. *Id*. Range of motion was normal in all extremities. *Id*. He was able to walk on his heels, heel/toe walk, and squat without difficulty. *Id*. There was some evidence of left calf atrophy secondary to leg surgery, but otherwise no difficulties. *Id*. Sensory exam was normal, except for slightly decreased sensation over skin graft. *Id*. Torrance noted that plaintiff had a long-standing history of diabetes, which was poorly controlled. *Id*. Torrance concluded that plaintiff ambulated well without difficulty and showed no deficiency in left lower extremity other than his complaints of pain. *Id*. Torrance opined that Jones had questionable chest pain that should be worked up by a primary care physician. *Id*.[5]

---

[5] Of course, plaintiff's treating physician, Dr. Boersma, found no source for plaintiff's pectoral pain. *See*, discussion, *supra*.

In sum, based in part upon inconsistencies in plaintiff's self-professed limitations and approximate ten year hiatus from seeking medical care for his lower extremity, the ALJ opted to favor the findings of one treating physician and an examining consultative physician over the limitations recognized by another treating physician. An ALJ is permitted to afford diminished weight to the opinion of a treating physician as long as he offers valid reasons for doing so. *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (citing *Greenspan, supra*). The ALJ's decision to discount Dr. Finley's June 2006, letter is well-supported. *See, Thomas v. Astrue*, 2008 WL 1924202 (5th Cir. Apr. 30, 2008) (unpubl.) (ALJ was within discretion to discount treating physician's reduction of claimant's RFC from light to sedentary where the opinion was not supported by the medical examinations and was contradicted by the opinions of two other doctors); *Robinson v. Astrue*, 2008 WL 822235 (5th Cir. Mar. 25, 2008) (unpubl.) (ALJ exercised discretion to discount treating physician's opinion where ALJ instead relied upon the opinions of other examining physicians and experts).

In the aftermath of the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council. (Tr. 149). The post-ALJ submission was a July 3, 2007, letter from Dr. Finley which stated that since 1993, Jones had developed significant post traumatic arthritis in his left hip and left knee and had continuing chronic pain in both areas. *Id*. He also was unable to dorsiflex his left foot and ankle more than a small amount of toe motion due to severe nerve injury in his leg. *Id*. Finley concluded that Jones was unemployable due to his chronic severe pain and disability in his left lower extremity. *Id*.

The foregoing letter constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart*

9

405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[6] The statement that Jones suffers from painful arthritis is not new. Moreover, to the extent that Jones' inability to dorsiflex his left foot is a limitation not previously identified, there is no indication that plaintiff experienced this limitation during the relevant period. Finally, a physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Plaintiff also seeks remand so that the Commissioner may consider new evidence which he presented in the first instance to this court. (Pl. Exhs. [doc. # 5]). The evidence consists of 1) yet another statement from Dr. Finley that Jones is unable to work as of December 2007 and for the foreseeable future; and 2) a September 28, 2007, outpatient visit with Benson Grigsby, M.D. for diabetes. *Id*.

A court may order additional evidence to be taken before the Commissioner "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989) (citing, 42 U.S.C. § 405(g). To justify remand, the evidence must be "new," and not merely cumulative of what is already in the record. *Id.* (citation omitted). The evidence must also be "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Finally, the claimant must demonstrate good

---

[6] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

cause for not having incorporated the new evidence into the administrative record. *Id.*

The court observes that Dr. Finley's December 2007 note does not say anything new, and in any event, is not material because a physician's statement that a claimant is disabled is not a medical opinion entitled to any special significance under the regulations. 20 C.F.R. § 404.1527(e). Moreover, contrary to plaintiff's argument, his September 2007 visit to Dr. Grigsby does not document a diabetes impairment previously unconsidered by the Commissioner. The ALJ specifically considered plaintiff's diabetes and found that there was no evidence of end organ damage or any resulting limitations. (Tr. 14). The ALJ's assessment is supported by plaintiff's treating physician, Dr. Boersma, who noted that Jones' diabetes was uncontrolled, but opined that there was no evidence that he was disabled in any way. (Tr. 86). Dr. Grigsby's report does not contradict this finding. Grigsby noted that plaintiff denied experiencing any diabetes related symptoms. Moreover, if anything, Dr. Grigsby only buttresses the ALJ's decision because he noted that plaintiff exhibited a normal gait, grossly normal tone and muscle strength and *full painless range of motion of all major muscle groups and joints*.

In sum, the undersigned finds that the ALJ's residual functional capacity determination is supported by substantial evidence. The undersigned further finds that the Commissioner's decision as a whole is supported by substantial evidence and is free of legal error.[7] Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

---

[7] Plaintiff did not allege any errors with the remaining steps of the sequential evaluation process.

objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of July, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE